IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CAR SENSE, INC.    :    CIVIL ACTION
          :
    v.     :
          :
AMERICAN SPECIAL RISK, LLC, :
et al.        :    NO. 13-5661

MEMORANDUM

McLaughlin, J.         October 24, 2014

   This action arises from the plaintiff, Car Sense, Inc. ("Car Sense"), entering into an agreement with the defendants Signet Financial Group, Inc. ("Signet Financial") and Signet Reinsurance Company, Ltd. ("Signet Re") that allowed Signet Financial and Signet Re to offer financial products to Car Sense customers.  Car Sense sued Signet Financial and Signet Re for breach of contract; breach of fiduciary duty; fraud; negligent misrepresentation; civil conspiracy; fraud under the Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1, et seq. ("UTPCPL"); and unjust enrichment.  Car Sense also sued defendant American Special Risk, LLC ("ASR") for breach of fiduciary duty; fraud; negligent misrepresentation; civil conspiracy; fraud under the UTPCPL; and unjust enrichment.

   ASR has moved to dismiss the claims asserted against it pursuant to Fed. R. Civ. P. 12(b)(6).  The Court grants ASR's motion and dismisses all claims asserted against ASR.

I.    Facts Alleged in the Complaint

        Car Sense is a leading used car retailer with
operations in Pennsylvania and New Jersey.  Its business model
is to provide high quality used cars to individual customers and
to assure customers that they are being treated honestly.
Complaint ¶¶ 13-14.

        Car Sense also offers programs to go along with their
used car sales.  One such program was the Vehicle Service
Agreement ("VSA"), under which the buyer of a used car could pay
a one-time fee in exchange for the right to have his or her car
repaired by Car Sense at no further cost during the term of the
VSA.  The VSA fee ranged from $1,700 to $2,400.  Complaint ¶¶
15-16.

        Signet Financial and Signet Re operated as a single
entity ("Signet") in the development of a Buy Back Guarantee
("BBG") program in or around 2003.  Signet advertised the BBG
program to car dealers such as Car Sense as a way to increase
customer participation in VSA programs.  Signet represented that
it would refund the entire VSA fee to the customer if the
customer never used the VSA to repair their vehicle.  Signet
charged a $98.00 fee or "premium" in exchange for the BBG.
Complaint ¶¶ 6, 18, 34, 36, Ex. B.

        Signet represented to car dealers such as Car Sense
that the BBG program was 100% secured via a reinsurance

agreement with Hannover Re Services, USA Inc., Hannover Reinsurance (Ireland) Limited, and/or E&S Reinsurance (Ireland) Limited (collectively, "Hannover"). ASR acted as Signet's reinsurance intermediary and agent in negotiating and procuring the reinsurance agreement with Hannover. This reinsurance agreement was critical to Signet's success in selling the BBG, as it reassured dealers and customers that there would be funds available to pay BBG refunds at the end of the VSA contract periods. Complaint ¶¶ 11, 22-24, 41.

Relying on the reinsurance policy representations, Car Sense entered into an agreement with Signet on or about January 10, 2004. This agreement allowed Signet to offer the BBG to Car Sense customers in connection with Car Sense's VSA program. Signet entered into the BBG agreements with individual Car Sense customers. Car Sense paid the $98.00 BBG fee on behalf of those customers that entered into BBG agreements with Signet. Complaint ¶¶ 36, 45, Ex. C, Ex. D.

Although Signet represented that the BBG was a legitimate insurance product, in reality the BBG was a fraudulent scheme engineered to generate one-time fees. Signet only allocated a tiny fraction, if any, of the BBG fees to its insurance reserves. Signet was also undercapitalized and lacked reserves to pay claims once they came due at the end of VSA contract periods. The BBG program was dependent on continually

obtaining more BBG contracts in order to pay claims submitted by existing customers.  Complaint ¶¶ 39-40, 47-48.

Moreover, the reinsurance agreement did not provide for 100% security of the BBG as Signet represented.  The reinsurance agreement was illusory, as Signet did not have sufficient assets to pay claims at the level required before any reinsurance coverage would be triggered.  Complaint ¶¶ 30, 121.

From 2004 through 2008, the period in which the BBG was offered to Car Sense customers, approximately 6,500 customers opted for the BBG.  Because of the nature of the VSA and BBG programs, any refunds payable under the BBG program would only be due at the end of the VSA contract period, which ranged from four to seven years.  Signet's liabilities to Car Sense customers under BBG agreements would therefore not become due and payable until sometime between 2008 and 2015.  Complaint ¶¶ 35, 53-54.

In mid-2008, customers who participated in the BBG program began submitting claims to Signet and were paid. However, in or about December 2010, Signet closed its doors and stopped funding claims submitted by Car Sense customers. Despite demand against Signet, neither Car Sense nor its customers have been able to recover any VSA refunds since December 2010.  Signet is now out of business.  Complaint ¶¶ 51, 56-57.

In or about 2009, Signet and Hannover agreed to commute the reinsurance agreement, effectively removing Hannover from involvement with the BBG program altogether and leaving the BBG program unsecured.  ASR participated in the negotiation and procurement of the commutation agreement between Signet and Hannover.  None of Signet's clients or customers were notified of the commutation agreement.  Complaint ¶ 55.

After Signet went out of business and stopped paying BBG refunds, Car Sense refunded the VSA fee for those customers who complied with the terms of the BBG.  Car Sense was not a party to the BBG contracts between Signet and Car Sense's customers, and was not under any legal obligation to refund the VSA fees.  Instead, Car Sense refunded the VSA fees "in light of Car Sense's reputation in the community as a high quality seller of used vehicles."  Car Sense has expended over $800,000 refunding its customers' BBG claims.  Complaint ¶¶ 58-59.[1]

---

[1] In its opposition to ASR's motion to dismiss, Car Sense argues that it is a "reasonable inference that Car Sense customers collecting a refund under the BBG from Car Sense have assigned their claims to Car Sense, a matter which would be the subject of later proof, not pleading."  Pl.'s Opp. at 10.  Nowhere in its complaint does Car Sense make any reference to receiving assignments of its customers' BBGs.  Rather, Car Sense alleges that, "In light of Car Sense's reputation in the community as a high quality seller of used vehicles, Car Sense has been refunding the VSA fee for those Buyers who complied with the terms of the BBG."  Complaint ¶ 58.  It is not a reasonable inference to conclude that Car Sense received assignments from its customers based on that allegation.  As such, the Court

II.  <u>Procedural History</u>

   This case is related to, and arises from the same facts as, another case which was before the Court: <u>Car Sense, Inc. v. Signet Financial Group, Inc., et al.</u>, No. 12-2512.  Car Sense brought that case against Signet Financial and the Hannover entities.

   On July 9, 2012, the Court compelled arbitration between Car Sense and the Hannover defendants in that case.  Car Sense and the Hannover defendants stipulated to the dismissal of the Hannover defendants with prejudice following that arbitration.  The Court dismissed the claims against Signet Financial without prejudice on September 11, 2013, because Car Sense never served Signet Financial or requested an entry of default against that defendant.

   Car Sense initiated the current lawsuit by filing a Praecipe for Writ of Summons with the Court of Common Pleas of Chester County, Pennsylvania, on December 3, 2012.  In the Writ, Car Sense named ASR and "Signet Reinsurance Company" as defendants.  Car Sense then successfully served ASR.  After unsuccessfully attempting to serve Signet Reinsurance Company, Car Sense filed a complaint in lieu of reissuing the Writ on September 25, 2013.  In this complaint, Car Sense named ASR,

---

analyzes the motion to dismiss as if Car Sense did not receive such assignments.

Signet Re, and Signet Financial as defendants.  Car Sense has never filed an affidavit of service with respect to either of the Signet entities.  Indeed, Car Sense concedes that it has not served either Signet entity.  Pl.'s Opp. at 2.  On September 26, 2013, ASR removed this case to federal court, invoking diversity jurisdiction.  ASR filed the pending motion to dismiss on October 17, 2013.

III. <u>Status of the Signet Entities</u>

        As a preliminary matter, the Court notifies Car Sense of its intention to dismiss Car Sense's claims against the Signet entities without prejudice because Car Sense has not served the Signet entities.  Fed. R. Civ. P. 4(m) requires a district court, on motion or on its own after notice to the plaintiff, to dismiss an action against a defendant without prejudice if that defendant has not been served within 120 days after the complaint is filed.  Rule 4(m) also requires a district court to extend the time for service if the plaintiff shows good cause for the failure to serve.

        This action was removed to this Court over a year ago. In that time, no affidavit of service for either Signet entity has been filed, nor has Car Sense made any motion requesting the Court's assistance in serving the Signet entities.  Car Sense has not made any showing of good cause for failure to serve the

Signet entities.  If Car Sense does not make such a showing, the
Court will dismiss all claims against Signet Financial and
Signet Re without prejudice.


IV.  Legal Standard

        A motion to dismiss filed pursuant to Rule 12(b)(6)
tests the sufficiency of the complaint.  Conley v. Gibson, 355
U.S. 41, 45 (1957), abrogated in other respects by Bell Atl.
Corp. v. Twombly, 550 U.S. 544 (2007).  A claim may be dismissed
under Rule 12(b)(6) for "failure to state a claim upon which
relief can be granted."

        Although Rule 8 requires only that the complaint
contain "a short and plain statement of the claim showing that
the pleader is entitled to relief" to "give the defendant fair
notice of what the . . . claim is and the grounds upon which it
rests," the plaintiff must provide "more than labels and
conclusions, and a formulaic recitation of the elements of a
cause of action will not do."  Twombly, 550 U.S. at 555 (quoting
Fed. R. Civ. P. 8(a)(2) and Conley, 355 U.S. at 47).  Similarly,
naked assertions devoid of further factual enhancement will not
suffice.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing
Twombly, 550 U.S. at 557).

        Although "conclusory" or "bare-bones" allegations will
not survive a motion to dismiss, Fowler v. UPMC Shadyside, 578

F.3d 203, 210 (3d Cir. 2009), a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits.  Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008).

The Court is required to conduct a two-part analysis when considering a Rule 12(b)(6) motion.  First, the factual matters averred in the complaint, and any attached exhibits, should be separated from legal conclusions asserted.  Fowler, 578 F.3d at 210.  Any facts pleaded must be taken as true, and any legal conclusions may be disregarded.  Id. at 210-11. Second, the Court must determine whether those factual matters averred are sufficient to show that the plaintiff has a "plausible claim for relief."  Id. at 211 (quoting Iqbal, 556 U.S. at 679).

This two-part analysis is "context-specific" and requires the Court to draw on "its judicial experience and common sense" to determine if the facts pleaded in the complaint have "nudged [the plaintiff's] claims" from "conceivable to plausible."  Iqbal, 556 U.S. at 679-80.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. at 678.

V.   <u>Discussion</u>[2]

   A.   <u>Breach of Fiduciary Duty</u>

        Car Sense's breach of fiduciary duty claim against ASR
is dismissed because Car Sense has failed to allege facts
indicating that ASR owed Car Sense any fiduciary duties.  Under
Pennsylvania law, to allege a claim for breach of fiduciary
duty, a plaintiff must establish that a fiduciary or
confidential relationship existed between the plaintiff and the
defendant.  <u>Baker v. Family Credit Counseling Corp.</u>, 440 F.
Supp. 2d 392, 414 (E.D. Pa. 2006).

        A confidential relationship exists "whenever the
relative position of the parties is such that one has power and
means to take advantage of or exercise undue influence over the
other."  <u>Young v. Kaye</u>, 443 Pa. 335, 343 (1971).  In other
words, a confidential relationship exists whenever "one person
has reposed a special confidence in another to the extent that
the parties do not deal with each other in equal terms, either
because of an overmastering dominance on the one side, or
weakness, dependence or justifiable trust, on the other."

---

[2] In its motion, ASR argues in two short paragraphs that Car
Sense lacks standing or legal entitlement to recover for its
claims against Signet and ASR.  Def.'s Mem. at 3-4.  This
argument appears to be about Car Sense's failure to state a
claim rather than Car Sense's lack of constitutional standing.
The Court therefore moves forward and analyzes whether Car Sense
has successfully stated a claim against ASR.

Truver v. Kennedy, 425 Pa. 294, 306 (1967) (quoting Ringer v. Finfrock, 340 Pa. 458, 461-62 (1941)).

Car Sense has alleged that ASR acted as Signet's reinsurance intermediary and broker in negotiating the reinsurance agreement and subsequent commutation with Hannover. Car Sense has not, however, alleged any sort of relationship between itself and ASR, much less the type of confidential relationship that would give rise to fiduciary duties.

Car Sense argues that ASR owed it fiduciary duties because Car Sense was a third party beneficiary of the reinsurance agreement.  A party becomes a third party beneficiary:

> only where both parties to the contract
> express an intention to benefit the third
> parties in the contract itself, *unless*, the
> circumstances are so compelling that
> recognition of the beneficiary's right is
> appropriate to effectuate the intention of
> the parties, and the performance satisfies
> an obligation of the promisee to pay money
> to the beneficiary or the circumstances
> indicate that the promisee intends to give
> the beneficiary the benefit of the promised
> performance.

Scarpitti v. Weborg, 530 Pa. 366, 372-73 (1992) (emphasis in original) (citations omitted).

There is no express intention to benefit Car Sense in the reinsurance agreement – Car Sense is never mentioned in the

agreement.[3]  Def.'s Mot. to Dismiss Ex. 5.  Car Sense argues that

it and the BBG customers were third party beneficiaries under

the reinsurance agreement because "the BBG participants would be

the ones submitting claims and ultimately benefitting from

reinsurance payouts."  Pl.'s Opp. 28.  This statement

mischaracterizes the reinsurance agreement.  There is no

provision in that agreement allowing BBG customers to submit

claims to and receive payment from Hannover.  Instead, the

reinsurance agreement allows the "Reinsured" (Signet Re) to

submit claims to and receive payment from Hannover.  Def.'s Mot.

to Dismiss Ex. 5.

        Because there is no express intention in the

reinsurance agreement to benefit Car Sense, Car Sense must show

_____

[3] Car Sense did not include the reinsurance agreement as an
exhibit in its complaint.  Rather, ASR attached it as an exhibit
to its motion to dismiss.  As such, the reinsurance agreement is
a matter outside the pleadings.  Normally, if a court considers
matters outside the pleadings, a motion to dismiss must be
treated as one for summary judgment under Rule 56.  Fed. R. Civ.
P. 12(d); see also In re Burlington Coat Factory Securities
Litigation, 114 F.3d 1410, 1426 (3d Cir. 1997).  A court may,
however, "consider an undisputedly authentic document that a
defendant attaches as an exhibit to a motion to dismiss if the
plaintiff's claims are based on the document."  Pension Ben.
Guar. Corp. v. White Consol. Industries, Inc., 998 F.2d 1192,
1196 (3d Cir. 1993); see also Burlington Coat Factory, 114 F.3d
at 1426.  Car Sense states in its brief that its breach of
fiduciary duty claim depends on its status as a third party
beneficiary of the reinsurance agreement.  Pl.'s Opp. at 27.
Additionally, both parties cite to the reinsurance agreement in
their briefs, indicating that its authenticity is undisputed.
The Court can therefore consider the reinsurance agreement
without converting the motion to dismiss into one for summary
judgment.

that "circumstances are so compelling that recognition of the beneficiary's right is appropriate to effectuate the intention of the parties" in order to establish Car Sense's status as a third party beneficiary.  <u>Scarpitti</u>, 530 Pa. at 373.

Car Sense argues that Signet's advertising and marketing materials suggest the notion that used car dealers such as Car Sense were considered intended third party beneficiaries of the reinsurance agreement.  These marketing materials, however, make no explicit promises that BBG customers would be able to submit claims under the reinsurance agreement. Complaint Ex. B.  Car Sense has failed to allege facts showing that "circumstances are so compelling that recognition of the beneficiary's right is appropriate to effectuate the intention of the parties."  <u>Scarpitti</u>, 530 Pa. at 373.

Car Sense has not shown that it or the BBG customers were third party beneficiaries under the reinsurance agreement. Nor has Car Sense alleged any other relationship between it and ASR.  As such, Car Sense has not established that ASR owed Car Sense any fiduciary duties.  Car Sense's breach of fiduciary duty claim against ASR is dismissed.


B.    <u>Fraudulent Misrepresentation</u>

Car Sense's fraudulent misrepresentation claim against ASR is dismissed because Car Sense has failed to allege any

material misrepresentations made by ASR which were relied upon
by Car Sense.  The elements of fraudulent misrepresentation
under Pennsylvania law are:  (1) a representation; (2) which is
material to the transaction at hand; (3) made falsely, with
knowledge of its falsity or recklessness as to whether it is
true or false; (4) with the intent of misleading another into
relying on it; (5) justifiable reliance on the
misrepresentation; and (6) the resulting injury was proximately
caused by the reliance.  Bortz v. Noon, 556 Pa. 489, 499 (1999).

A defendant may be liable for fraudulent
misrepresentation even if the representations were not made
directly to the plaintiff.  Woodward v. Dietrich, 548 A.2d 301,
315-16 (Pa. Super. Ct. 1988); see also RESTATEMENT (SECOND) OF TORTS
§ 533 (1977).  To be liable for an indirect fraudulent
statement, the defendant must have made a misrepresentation to a
third person with the intent or a reason to expect that "its
terms will be repeated or its substance communicated [to the
plaintiff], and that it will influence [the plaintiff's] conduct
in the transaction or type of transaction involved."  RESTATEMENT
(SECOND) OF TORTS § 533.

Car Sense does allege that ASR knowingly made false
representations to Hannover regarding the nature and viability
both of the Signet entities and the BBG in order to procure the
reinsurance necessary to effectuate the BBG scheme.  Car Sense

has not alleged that Hannover communicated those representations
to Car Sense, or that ASR made any representations to Car Sense
directly.[4]  Because Car Sense has not alleged that ASR made any
representations to Car Sense, either directly or indirectly, the
fraudulent misrepresentation claim against ASR is dismissed.


C.   Negligent Misrepresentation

Similarly, Car Sense's negligent misrepresentation
claim against ASR is dismissed because Car Sense has failed to
allege any material misrepresentations made by ASR which were
relied upon by Car Sense.  The elements of negligent
misrepresentation under Pennsylvania law are:  (1) a
misrepresentation of material fact; (2) made under circumstances
in which the misrepresenter ought to have known its falsity; (3)
with an intent to induce another to act on it; and (4) which
results in injury to a party acting in justifiable reliance on
the misrepresentation.  Bortz, 556 Pa. at 500.

A third party injured by a negligent misrepresentation
may recover when the supplier of the information "knew that the
information was intended to go to that specific third party,

---

[4] Because Car Sense has not alleged that Hannover communicated
any representations made by ASR to Car Sense, the Court does not
decide whether Car Sense's allegations regarding ASR's
misrepresentations to Hannover meet the heightened pleading
standards of Fed. R. Civ. P. 9(b).  Rule 9(b) requires a
plaintiff to "state with particularity the circumstances
constituting fraud."

even where there is no contractual privity between the supplier of information and the injured third party." Castle v. Crouse, 2004 WL 257389, at *8 (E.D. Pa. Feb. 11, 2004); see also David Pflumm Paving & Excavating, Inc. v. Foundation Servs. Co., 816 A.2d 1164, 1168 (Pa. Super. Ct. 2003); RESTATEMENT (SECOND) OF TORTS § 552.

The only alleged misrepresentations made by ASR were to Hannover in the procurement of the reinsurance agreement. There are no allegations that Hannover communicated at all with Car Sense, much less forwarded any misrepresentations made by ASR to Car Sense.  Car Sense could therefore not have relied on any misrepresentations made by ASR.  Car Sense's negligent misrepresentation claim against ASR is dismissed.

D.   Civil Conspiracy

Car Sense's civil conspiracy claim against ASR is dismissed because Car Sense has not alleged facts indicating that ASR and Signet combined with the intent to do an unlawful act.  To recover for a claim of civil conspiracy, a plaintiff must show that "two or more persons combined or agreed with intent to do an unlawful act or to do an otherwise lawful act by unlawful means." Thompson Coal Co. v. Pike Coal Co., 488 Pa. 198, 211 (1979).  A plaintiff must also show that the defendants acted with the intent to injure.  Id.

Additionally, a plaintiff must prove a separate underlying tort as a predicate for civil conspiracy liability. Boyanowski v. Capital Area Intermediate Unit, 215 F.3d 396, 405-07 (3d Cir. 2000).  A civil conspiracy claim "merely serves to connect the actions of other defendants with the actionable tort of one defendant."  Haymond v. Haymond, 2001 WL 74630, at *2 (E.D. Pa. Jan. 29, 2001).  In other words, civil conspiracy serves as a means for establishing vicarious liability for the underlying tort.  Boyanowski, 215 F.3d at 407.

Car Sense has not alleged sufficient facts to show that ASR and Signet combined with the intent to do an unlawful act.  Its allegation that "ASR combined with Signet to form and execute a civil conspiracy" is nothing more than a recitation of an element of the cause of action.  Complaint ¶ 152.  The remaining allegations are "bare-bones" claims that ASR and Signet worked together.  The only specific factual allegations made by Car Sense against ASR are that ASR negotiated the reinsurance agreement and subsequent commutation agreement between Signet and Hannover.  This is not enough to show, even granting Car Sense all reasonable inferences from those facts, that Signet and ASR combined with the intent to perform an unlawful act.  Rather, the reasonable inference is that ASR acted in its normal capacity as a reinsurance intermediary in its dealings with Signet and Hannover.

E.   <u>UTPCPL</u>

Car Sense's UTPCPL claim against ASR is dismissed because Car Sense has not alleged that it purchased goods for personal, family, or household purposes.  To maintain a private right of action under the UTPCPL, a claimant must:  (1) be a "person"; (2) who made a "purchase"; (3) primarily for personal, family, or household purposes; and (4) have suffered an ascertainable loss as the result.  <u>Valley Forge Towers South Condominium v. Ron-Ike Foam Insulators, Inc.</u>, 574 A.2d 641, 645 (Pa. Super. Ct. 1990).[5]

Car Sense satisfied the requirement that it be a "person."  Under the UTPCPL, a person is defined as:  "natural persons, corporations, trusts, partnerships, incorporated or unincorporated associations, and any other legal entities."  73 P.S. § 201-2(2).  Car Sense is a corporation, and is considered a person under the UTPCPL.

---

[5] The statutory text is: "Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3 [73 P.S. § 201-3] of this act, may bring a private action to recover actual damages or one hundred dollars ($100), whichever is greater.  The court may, in its discretion, award up to three times the actual damages sustained, but not less than one hundred dollars ($100), and may provide such additional relief as it deems necessary or proper.  The court may award to the plaintiff, in addition to other relief provided in this section, costs and reasonable attorney fees."  73 P.S. § 201-9.2.

The "purchase" requirement, on the other hand, has not been satisfied.  The UTPCPL contemplates as a protected class "only those who purchase goods or services, not those who may receive a benefit from the purchase." Gemini Physical Therapy and Rehabilitation, Inc. v. State Farm Mut. Auto. Ins. Co., 40 F.3d 63, 65 (3d Cir. 1994).  The statute "unambiguously permits only persons who have purchased or leased goods or services to sue. . . .  Had the Pennsylvania legislature wanted to create a cause of action for those not involved in a sale or lease, it would have done so." Katz v. Aetna Cas. & Sur. Co., 972 F.2d 53, 55 (3d Cir. 1992).

In Balderston v. Medtronic Sofamor Danek, Inc., 285 F.3d 238, 239 (3d Cir. 2002), a doctor sued the manufacturer of a device known as a "bone screw."  The doctor used the screws in spinal fusion surgeries because he believed that they were safe and appropriate for that use.  Id.  He brought suit under the UTPCPL, alleging that the screw manufacturer intentionally concealed and misrepresented the FDA approval status of the screws.  Id.

The Third Circuit held that the doctor could not bring a UTPCPL claim against the screw manufacturer because he had not purchased the screws; rather, his patients had made the purchases.  Id. at 240-42.  The court rejected the doctor's argument that because he was the "decisionmaker" in the

"purchase transactions," he should be treated as a "purchaser" under the UTPCPL.  Id.

Similarly, Car Sense has not alleged that it purchased any BBGs from Signet.  Instead, it has alleged that it acted as an intermediary in transactions between Signet and the BBG customers.  In this sense, Car Sense is in a similar position to the doctor in Balderston.  Because Car Sense did not make a purchase, it may not bring a private action under the UTPCPL.

Car Sense argues that strict technical privity is not required to sustain a cause of action under the UTPCPL, citing Valley Forge.  Although Car Sense is correct that privity between the plaintiff and defendant is not required, the plaintiff still must have made a purchase.  For example, in Valley Forge, a condominium association hired a contractor to install roofing membrane on one of its buildings.  Valley Forge, 574 A.2d at 642-43.  The contractor specified in the contract that he would install membrane manufactured by Mameco.  Id.  The contractor subsequently bought roofing membrane from Mameco and installed it for the condominium association.  Id.  The roof began to leak two years later, and the condominium association sued both the contractor and Mameco under the UTPCPL.  Id.

The court held that despite the fact that the condominium association was not in privity with Mameco, it still made a "purchase" under the UTPCPL, as it purchased the roofing

membrane through its contractor.  Id. at 645-47.  Car Sense's claim is distinguishable from that in Valley Forge, because Car Sense has not made any purchases, either directly or indirectly, from any of the defendants.

Car Sense also argues that it brings its UTPCPL claim in a representative capacity on behalf of the BBG customers, again relying on Valley Forge.  This case is distinguishable from Valley Forge in this respect as well.

The entity acting in a representative capacity in Valley Forge was a condominium association.  In Pennsylvania, condominium associations have statutory authority to act in a representative capacity on behalf of their constituent owners to sue, enter into contracts, and to regulate the maintenance, repair, and replacement of common elements of the condominium building.  Id. at 645; 68 Pa. C.S.A. §§ 3301 et seq.; see also Cumberland Valley School District v. Hall-Kimbrell Environmental Services, Inc., 639 A.2d 1199, 1201-02 (Pa. Super. Ct. 1994) (rejecting an individual's attempt to bring UTPCPL claims as a representative of a school district's taxpayers and students because he was not their legal representative).

Car Sense has not cited any legal authority for the proposition that a car dealer can sue on behalf of its customers in a representative capacity.  Its reliance on Valley Forge is therefore misplaced.

F.    <u>Unjust Enrichment</u>

Car Sense's unjust enrichment claim against ASR is dismissed because Car Sense did not provide any benefit to ASR. The elements of unjust enrichment are:  (1) benefits conferred on the defendant by the plaintiff; (2) appreciation of such benefits by the defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for the defendant to retain the benefit without payment of value.  <u>Temple University Hosp., Inc. v. Healthcare Management Alternatives, Inc.</u>, 832 A.2d 501, 507 (Pa. Super. Ct. 2003) (quoting <u>AmeriPro Search Inc. v. Fleming Steel Co.</u>, 787 A.2d 988, 991 (Pa. Super. Ct. 2001).  The most important element of unjust enrichment is "whether the enrichment of the defendant is unjust; the doctrine does not apply simply because the defendant may have benefitted as a result of the actions of the plaintiff."  <u>Id.</u>

Car Sense claims that it conferred benefits on ASR by "funding the financially unsustainable and fraudulent BBG Program, while Signet retained most of BBG fees and ASR derivatively collected portions therefrom."  Complaint § 180. This vague, conclusory allegation is not enough to establish that Car Sense conferred a benefit upon ASR.

Furthermore, Car Sense claims that ASR should repay Car Sense for all of the VSA refunds Car Sense paid out to BBG

customers.  ASR never had a duty to pay BBG refunds to those customers; only Signet did.  Car Sense did not confer a benefit on ASR by refunding the VSA fees.

Car Sense has not pleaded allegations sufficient to show that it conferred any benefit upon ASR.  Car Sense's unjust enrichment claim against ASR is dismissed.

An appropriate order shall issue.